CHARLES W. NOYES *et al.* v. J. B. NICHOLS AND T. L. BYERS, *etc.*

No. 12,526. (65 Pac. 646.)

SYLLABUS BY THE COURT.

PARTNERSHIP—*Dissolution Agreement—Release of Partners.* A. and B. were in partnership and B. sold out to A., who agreed to pay all of the partnership debts. A. then gave to his wife a chattel mortgage on the entire stock of goods, with power therein to sell them at private sale. Under this power she sold them to a firm of partnership creditors for less than half what they were worth, so that such creditors realized on a resale of the goods,

over and above what they had paid for them, sufficient funds to discharge their claim against the partnership. *Held*, that, this being done without any knowledge on the part of such creditors of the assumption of the partnership debts by A., B. was not thereby discharged from his liability on the partnership indebtedness.

Error from Cowley district court; W. T. McBRIDE, judge. Opinion filed July 6, 1901. Division two. Reversed.

*J. E. Torrance*, and *Culver & Phillip*, for plaintiffs in error.

*J. H. Buckman*, for defendant in error T. L. Byers.

The opinion of the court was delivered by

CUNNINGHAM, J.: The defendants in error T. L. Byers had been for some time prior to April 16, 1897, in partnership with one J. B. Nichols, at Clinton, Mo., engaged in selling boots and shoes as J. B. Nichols & Co. On that day they dissolved partnership, Byers going out, and Nichols agreed to pay the debts of the firm, retaining firm property with which to do so. They were at the time indebted to Noyes, Norman & Co., the plaintiffs in error.

On May 10, 1897, Nichols executed a mortgage on the entire stock of goods to his wife to secure a claimed indebtedness to her of $1400, and she went into the possession of the goods. The mortgage contained a provision authorizing her to sell at private sale. Soon thereafter Nichols executed to Noyes, Norman & Co. a note for the amount of his indebtedness to them, due in sixty days, and secured the same by a second mortgage on the stock of goods, and on May 20 they brought their action of replevin for the same against Mrs. Nichols. The goods were turned over to Noyes, Norman & Co. in this replevin proceeding, and they

advertised to sell them at auction under their mortgage. Before this action in replevin came on for trial, Noyes, Norman & Co. purchased the goods from Mrs. Nichols, paying her therefor $1000, and as a further consideration releasing J. B. Nichols from any and all demands which they had against him as a member of the firm of J. B. Nichols & Co. or otherwise. The goods were at the time of the value of $2300 or more, and were soon thereafter sold at private sale by Noyes, Norman & Co. for $1900. The total amount claimed by plaintiffs in error against the firm of J. B. Nichols & Co. was less than $900.

Afterward, Noyes, Norman & Co., these plaintiffs in error, brought this action in the district court of Cowley county, against defendant in error Byers, to recover of him the full amount of their claim against the firm of J. B. Nichols & Co., of which he had been a member. Upon the trial of this action the above facts were shown without dispute, and Nichols also testified that, soon after the dissolution of the partnership of J. B. Nichols & Co., he informed Noyes, Norman & Co. of the fact, and that he was to pay the debts of the firm. This, however, was denied by the plaintiffs. The jury found for Byers, and the plaintiffs bring the case here.

Several errors are alleged, but we find them all without foundation except one. Had it been admitted, or found as an independent fact, that plaintiffs knew of the dissolution of the firm of J. B. Nichols & Co. and of Nichols's agreement to pay the debts of that firm, including that due to the plaintiffs, then Byers would have been discharged from that debt by the extension of time given Nichols, or by the full discharge given to him in connection with the purchase of the goods from Mrs. Nichols, for the

relation which the dissolution agreement had created, as between Nichols and Byers, was that of principal and surety. If plaintiffs did not know this, then their transactions with Nichols did not have this effect.

Defendant in error, however, claims that the general verdict found all of the issues in his favor, and that as the question whether plaintiffs had knowledge of the dissolution and the terms thereof was one of the issues, therefore it follows that the jury found that the plaintiffs did have this knowledge. This would all be so if the questions which were submitted to the jury had been submitted under proper instructions from the court. One of the instructions given was as follows:

"He (defendant) also claims that on or about the 10th day of June, 1897, the plaintiffs took possession of the stock of goods of J. B. Nichols & Co., under a pretended purchase of the same from May Nichols, the wife of J. B. Nichols, who held a chattel mortgage upon the goods, and that the price paid for said goods to said May Nichols was not a sufficient or adequate price for the same, and that the goods were of a much greater value than the price paid for them, and that the value of the goods so purchased and of which the plaintiff took possession, over and above the amount paid May Nichols, was sufficient to discharge and did discharge all the indebtedness of J. B. Nichols or J. B. Nichols & Co. to the plaintiff. If you should find from the evidence that plaintiffs did take charge of said goods under the circumstances as set forth above, then they would be bound in good faith to allow a reasonable and fair value for the goods so taken and the reasonable and fair value of the goods over and above the amount of $1000 paid by plaintiffs to May Nichols should be credited upon the indebtedness of J. B. Nichols & Co. to the plaintiffs."

It will be seen by this instruction that the jury were told to credit on the account being sued on the fair value of the goods purchased by the plaintiffs

Noyes v. Nichols.

from Mrs. Nichols over and above the $1000 which they had paid her for them, and as the agreed statement of fact showed that the value of the goods was more than $2300, the instruction was substantially a direction to the jury to bring in a verdict for the defendant Byers. In no way was this result predicated upon any knowledge which plaintiffs might have had of the relation existing between Nichols and Byers by reason of their dissolution agreement.

Now, does this instruction properly state the law? We must, of course, proceed upon the hypothesis of honest dealing on the part of all parties; and that these transactions were neither fraudulent nor colorable. There is neither testimony to show, nor claim made, that they were. Mrs. Nichols had a right under her mortgage to sell the goods to any one and convey a good title. She did sell to the plaintiffs. They got $2300 worth of goods, which they afterward sold for $1900, for $1000. That was their good fortune. They were entitled to the benefit of their good bargain. They were under no legal obligation to divide their profits with Byers, nor with any one else. In the absence of information concerning the relation which existed between Nichols and Byers arising from their contract of dissolution, the plaintiffs were at liberty to treat with both Nichols and his wife and the stock of goods as they did, without in any manner prejudicing their right to proceed against Byers, except, of course, that the discharge of Nichols would discharge Byers as to one-half of their legitimate claim against the firm of J. B. Nichols & Co.

We think the giving of the instruction prejudicial error for which the judgment must be reversed and a new trial awarded.

SMITH, ELLIS, JJ., concurring.